A97A0781. UTICA MUTUAL INSURANCE COMPANY et al.
v. MITCHELL.
(490 SE2d 489)

SMITH, Judge.

Suanne Marie Mitchell filed this action in superior court pursuant to OCGA § 9-11-60 (d) to set aside the dismissal by the probate court of her mother as guardian of Mitchell's property. The trial court

granted the motion. Because OCGA § 9-11-60 (d) was not an appropriate vehicle for seeking review in this case, we reverse.

The action underlying this appeal arose from a guardianship that came into effect following the settlement of a wrongful death action. As a result of the settlement, Mitchell, 13 years old at the time, was awarded approximately $450,000 to be held in a trust. Her mother, Kirby, was appointed guardian of Mitchell's property on May 13, 1988. Utica Mutual Insurance Company provided a $450,000 bond during the course of the guardianship. On April 3, 1991, Kirby petitioned the probate court to allow her resignation as guardian. Her justification for resigning was that Mitchell had been emancipated by marriage in February 1990. After the petition was filed, a citation was issued, and notice of the dismission hearing was published.[1] On May 6, 1991, the probate court issued a final order and letters of dismission relieving Kirby from the guardianship. Subsequently, in May 1995, Mitchell filed an action in superior court to set aside the dismissal of Mitchell as guardian.[2] She then filed a motion for summary judgment which the trial court granted. This appeal by Utica ensued.

The trial court did not have authority to rule on Mitchell's summary judgment motion because it was without jurisdiction under OCGA § 9-11-60 to entertain the action to set aside the dismissal. Subsection (a) of that statute provides, "A judgment *void on its face* may be attacked in any court by any person. In all other instances, judgments shall be subject to attack only by a direct proceeding brought for that purpose in one of the methods prescribed in this Code section." (Emphasis supplied.) The judgment Mitchell seeks to attack, that of the probate court dismissing her mother as guardian, is not void on its face. That judgment explicitly recites that "[a]ll procedural requirements of Georgia law have been met." Such a recitation, although broad, necessarily includes those requirements set forth at OCGA § 29-2-84, the statute addressing the procedures for obtaining letters of dismission from the probate court. Although Mitchell now argues that the probate court did not comply with those procedures and even submits the affidavit of the probate court judge to that effect, such evidence is not apparent from the *face* of the probate court judgment.

Furthermore, the Supreme Court has expressly limited judg-

---

[1] The publication required "all persons interested" to appear at a specified time and place for a hearing on the petition for dismissal.

[2] Mitchell alleged that the dismissal was improperly granted because, among other things, there was no accounting and settlement made to the probate court and on the ground that a nonamendable defect appeared on the face of the record because she was not given notice of the dismissal hearing.

ments void on their faces under subsection (a) to "those judgments which·lack either personal or subject matter jurisdiction." *Murphy v. Murphy*, 263 Ga. 280, 282 (430 SE2d 749) (1993). As for any argument that the judgment is void because the probate court did not have personal jurisdiction for lack of service, the record shows that the application for dismission was published as provided in OCGA § 29-2-84 (a). Such service in special statutory proceedings is expressly allowed by OCGA § 9-11-4 (j). Accordingly, the judgment is not void, and Mitchell was not authorized to attack that judgment in superior court. See OCGA § 9-11-60 (b) (judgments may be attacked by motion to set aside only in court of rendition).

The dissent argues that the probate court judgment is void for lack of personal jurisdiction because the ward was never served with notice of the dismission. In particular, the dissent states that notice was required under OCGA § 9-11-4 or § 29-2-77. A reading of those statutes, though, shows that they do *not* require such notice. OCGA § 29-2-84 (a) is the only statute addressing service of a petition for dismission, and there is no dispute that notice of the hearing was properly published under that statute. OCGA § 9-11-4 (j) expressly provides that service is sufficient when "made in accordance with the statutes relating particularly to the proceeding." Service was accomplished as provided by OCGA § 29-2-84, and it was therefore sufficient.

It may be regrettable that service on the ward is not expressly provided for in our Code, but the statutory scheme as currently provided by our legislature simply does not require personal service on the ward. Because notice was accomplished as provided by the probate code, it cannot be said that the probate court judgment was void on its face, and the superior court did not have jursidiction over the issues raised by Mitchell's action.

*Judgment reversed. Andrews, C. J., Birdsong, P. J., and Ruffin, J., concur and concur specially. Beasley and Eldridge, JJ., concur in part and dissent in part. McMurray, P. J., dissents.*

RUFFIN, Judge, concurring specially.

I concur in the court's opinion, but not without concern over the due process issues Judge Beasley raises in her separate opinion. As she notes, due process may well require that the ward receive personal notice of the guardian's attempts to end their relationship. As Judge Smith correctly states, however, the *statutory scheme* as currently designed by the Legislature does not require the guardian to personally serve the ward with a copy of the petition for dismission. Judge Beasley's partial dissent, in effect, is an effort to declare unconstitutional these statutory notice provisions by finding service by publication to be constitutionally impermissible. Such an action

exceeds this Court's power.

As the superior court noted in its ruling, Mitchell argued that the statutory notice provisions at issue failed to provide her procedural due process. Such a claim may have merit, considering the potential effect of the judgment on the ward's claims that the guardian failed properly to discharge her duties. See *Gay v. Gay*, 121 Ga. App. 287, 290 (2) (173 SE2d 712) (1970) (order granting letters of dismission creates presumption that guardian fully and completely performed his or her duties); *Allan v. Allan*, 236 Ga. 199, 206 (223 SE2d 445) (1976) (in year's support proceeding, statute providing for notice by publication failed constitutional muster because it failed to notify parties whose rights were affected by final judgment).

The trial court, however, did not make any ruling regarding the constitutionality of the statutory scheme. Neither did Mitchell file any cross-appeal raising this issue. Therefore, the question is not before this Court. See *Decatur Fed. S & L Assn. v. Litsky*, 207 Ga. App. 752, 755 (2) (429 SE2d 300) (1993). Even if it were, we could not decide the matter. "This Court has no jurisdiction to determine the constitutionality of a state law, other than where the law has been held to be constitutional against the same attack being made, and only has jurisdiction to decide questions of law that involve the application, in a general sense, of unquestioned and unambiguous provisions of the Constitution of a given state of facts and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of Georgia or the Supreme Court of the United States." (Citations and punctuation omitted.) *Braden v. Bell*, 222 Ga. App. 144, 146 (1) (473 SE2d 523) (1996) (physical precedent only); see also *Pollard v. State*, 229 Ga. 698 (194 SE2d 107) (1972). Because the issue was not addressed in the trial court, we are also unable to transfer this case to the Supreme Court for determination. *Decatur Fed.*, supra.

Whether due process concerns *require* personal service on the ward is a murky and tangled issue, requiring a court of *competent* jurisdiction to consider the statutory notice provisions in light of other statutes allowing a ward who had no notice of the dismission to request an accounting. Compare OCGA §§ 29-2-84 and 29-2-77 (allowing dismission without personal notice to ward) with §§ 29-2-74 and 29-2-83 (allowing ward to reopen settlement). Given the limited scope of the issues properly before us, I concur with Judge Smith's analysis and result.

I am authorized to state that Chief Judge Andrews, Presiding Judge Birdsong, and Judge Smith join in this special concurrence.

BEASLEY, Judge, concurring in part and dissenting in part.

1. The trial court was not precluded from reaching the merits of plaintiff's claim because it did have jurisdiction of it.

Mitchell, the former ward, filed an "action to set aside dismissal of [the guardian of plaintiff's property]" in the superior court. She amended it once to detail certain alleged irregularities with respect to fulfillment of the guardian's duties and to seek a final accounting and settlement in the superior court. In her original complaint, she had asked the superior court to permit her to file with the probate court a petition for final accounting and settlement.

As authority for bringing this action in superior court, plaintiff cited OCGA § 9-11-60 (d), which governs motions to set aside judgments and specifies the permissible grounds for such relief. This method for obtaining relief from the probate court judgment constitutes a direct proceeding, as stated in subsection (b). *Sanders v. S. D. Leasing*, 189 Ga. App. 409, 410 (376 SE2d 420) (1988), disapproved on other grounds *Okekpe v. Commerce Funding Corp.*, 218 Ga. App. 705, 706 (463 SE2d 23) (1995). It is limited to the court which issued the judgment complained of, because subsection (b) provides that "[j]udgments may be attacked by motion only in the court of rendition."

Plaintiff could attack the probate court judgment in the superior court only in accordance with subsection (a), which governs collateral attacks. As provided therein, only "[a] judgment void on its face may be attacked in any court by any person." The question then is whether plaintiff's action in reality attacks the probate court judgment as being "void on its face" despite plaintiff's designation of subsection (d) as her procedural means.

The Supreme Court has defined the term "void on its face," as used in this portion of the 1966 Civil Practice Act, to mean "those judgments which lack either personal or subject matter jurisdiction." *Murphy v. Murphy*, 263 Ga. 280, 282 (430 SE2d 749) (1993). Clearly, the probate court had jurisdiction of the guardian's application for letters of dismission. OCGA § 29-2-84. Plaintiff's action, as amended, did not challenge that.

She did challenge the procedure which was followed in the probate court, which she alleged short-circuited the statutory requirements for dismissal of the guardian, allowing the guardian to defraud her. She also claimed that a nonamendable defect appeared on the face of the record in that she, as the minor whose property was the subject of the guardianship, was "not given notice of the dismissal hearing as required by OCGA § 29-2-77." It provides for notice by citation. In this regard Mitchell's case differs from *Lawing v. Erwin*, 251 Ga. 134 (303 SE2d 444) (1983), in which the complainant did not "assert lack of notice or failure of service" when attacking a judgment

collaterally and thus was not permitted to proceed under OCGA § 9-11-60 (a). Id. at 135. The Supreme Court recognized that such an assertion would allow a subsection (a) collateral attack. That was not changed by *Murphy,* which limited "void on its face" to judgments which lack either personal or subject matter jurisdiction.

As to deficiencies in the probate court procedure with respect to lack of accounting and settlement, this would not come within the definition attributed to "void on its face" by the Supreme Court so as to allow her collateral attack on this basis in the superior court.

As to lack of notice, which addresses lack of personal jurisdiction in the probate court to issue letters of dismission, the statutory procedure for obtaining such letters does not expressly require notice to her or the appointment of, or notice to, a guardian ad litem as plaintiff asserted. OCGA § 29-2-84 requires only notice by publication, which was accomplished. But the purpose of such publication is to notify creditors and other unknown interested parties that the guardian is about to be dismissed and to provide an opportunity to object. It is additional to notice to the person whose property is the subject matter of the guardianship and thus who owns the main interests at stake. Notice by the least effective means, publication, is obviously not intended for the ward, who not only is known but also has allegedly just become able to manage his or her property independent of the guardian. Such a person is rarely, if ever, likely to learn of the application for dismission by reading the county's official organ. Due process requires notice to the ward. As stated eloquently by Judge Floyd E. Propst in his Handbook for Probate Judges of Georgia (Council of Probate Court Judges of Georgia, 1992) at 358: "The law is very jealous of the rights and interests of wards, and seeks rigidly to guard them." The significance of dismission is awesome, because "[d]ismissal under [OCGA § 29-2-84] . . . amounts to an adjudication that [the guardian] has fully and completely performed all the duties of his trust." *Gay v. Gay,* 121 Ga. App. 287, 290 (173 SE2d 712) (1970). The estates of minors, as here, and incompetent persons are at stake.

The probate judge in this case knew that due process notice was required by law and it was part of the procedure practiced, but not in this case. He stated in his affidavit: "It is the procedure of this court, in a proceeding for the dismissal of a guardian, that I appoint a guardian ad litem where the ward is still a minor, that notice of the proceeding be given by the petitioner to the ward and that a hearing is conducted on all issues with regard to dismissal of the guardian including a fully accounting of the ward's estate."

The notice to the ward had to be accomplished pursuant to

OCGA § 9-11-4 or § 29-2-77, in order to constitute due process.[3] OCGA § 15-9-122 provides that the general laws and rules of practice are applicable to civil cases in the probate courts unless OCGA § 9-11-81 provides to the contrary. OCGA § 9-11-81 states that the Civil Practice Act applies "to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict [with the CPA] are expressly prescribed by law." OCGA § 29-2-84, which sets out the procedure for obtaining letters of dismission, does not spell out how the ward is to be notified. Thus, OCGA § 9-11-4 does not conflict with it.

Statutes are to be construed as a whole. *Weldon v. Bd. of Commrs. of Monroe County*, 212 Ga. App. 885, 887 (2) (443 SE2d 513) (1994), and cits. And the service provisions of the Civil Practice Act harmonize well with the probate code provisions for letters of dismission. The legislature clearly intends CPA process to apply to probate court procedure where appropriate. OCGA § 9-11-4 (j). The latter merely requires publication to notify non-parties who may have an interest, which is not covered by the CPA. The CPA covers notice to the adverse party, in this instance the ward. OCGA § 9-11-4. Plus the probate code allows an optional means of notifying the ward other than by CPA service, i.e., by citation. OCGA § 29-2-77. Plaintiff cites OCGA § 29-2-77 as the governing statute with respect to notice to her; it must be construed to mean that, instead of one of the other statutory provisions for service, the guardian may use this method, i.e., citation to appear and be present. "May" does not mean the guardian can notify or not, but rather that the guardian "may" do it in this fashion, or under OCGA § 9-11-4.[4] The finality of the grant of letters of dismission in *Hoke v. Walraven*, 57 Ga. App. 106 (194 SE 610) (1937), pivoted largely on the fact that it was done "after due citation" to the ward, who therefore "had knowledge that the application would be made . . . [and] filed no objection to the guardian's discharge." Id. at 106. The court stated that the ward "was legally cited by the ordinary to show cause against the discharge." Id. at 115. See Propst, supra at 368.

A guardian "may" wish to cite the ward or new guardian to be present at settlement of the guardianship account so as to preclude the final account from being challenged within five years, as would otherwise be permitted by OCGA § 29-2-74, or within four years, as provided by OCGA § 29-2-83. A particular form of due process being provided for in the probate code for mere settlement of accounts, and

---

[3] OCGA § 15-9-17 also provides methods of service "notwithstanding . . . other provision[s] of law to the contrary," but this section was not in effect until July 1, 1994. Ga. L. 1994, p. 725, § 1. The probate court issued its final order in 1991.

[4] Or, after July 1, 1994, under OCGA § 15-9-17.

no special notice process being required in the probate code for dismission of the guardian altogether, the general civil practice requirements apply. This analysis does not involve a consideration of the constitutionality of OCGA § 29-2-84 at all. It merely involves an ascertainment of the procedure required by the laws of Georgia for the grant of letters of dismission to a guardian. Such a determination requires more than a consideration of OCGA § 29-2-84 in isolation; one small square of fabric does not a cloak make.

In her brief on appeal, plaintiff Mitchell relies on OCGA § 9-11-4 (d) (3). She was a minor at the time and had become emancipated due to marriage; that is what prompted the guardian's application for dismission. Just because she became emancipated did not mean the guardian did not have to give notice, as appellants argue. Whether emancipated or not, the guardian was legally responsible for her property, the disposition of which was under the supervision of the court, until dismission.

It is on this ground alone that the superior court had jurisdiction of the action as a collateral attack, pursuant to OCGA § 9-11-60 (a). Since the superior court did not reach this issue, it would normally be necessary to remand the case for the court to rule on it. However, it is undisputed that service was not made on the emancipated minor ward, by citation or otherwise. The probate court judge by affidavit swore that at the time of dismissal of the guardian "no notice of the dismissal petition was given the ward by the Court nor is there a record of service on the ward." There was not even a final receipt from the ward, showing a final settlement between the guardian and the ward. See OCGA §§ 29-2-82, 29-2-81; Propst, supra at 316-317. The superior court had jurisdiction of this issue and should have set aside the judgment of the probate court on this basis.

A judgment right for any reason is to be affirmed. *Darugar v. Hodges*, 221 Ga. App. 227, 229 (471 SE2d 33) (1996). Thus, I dissent from the majority opinion insofar as the vacating and setting aside of the probate court order is concerned.

2. But the superior court went further and ordered that defendant Kirby and her surety present her accounts and vouchers for examination and for a final accounting, and in addition ordered that the case be tried by a jury on the issues of a final accounting and plaintiff's allegations. As authority for doing so, the superior court cited OCGA § 23-2-70 and two cases from the Supreme Court.

OCGA § 23-2-70 establishes the scope of equity jurisdiction over matters of account. Mitchell's action is not one for an equitable accounting but rather to set aside another court's order in part because of an improper and inadequate accounting. It is only in certain prescribed circumstances, such as when an accounting at law is inadequate, that equity jurisdiction can be exercised. *Herring v.*

*Standard Guaranty Ins. Co.*, 238 Ga. 261 (232 SE2d 544) (1977); *Peeples v. Peeples*, 193 Ga. 358 (18 SE2d 629) (1942). The accounting which plaintiff seeks, and her challenges to the "full discharge of the duties of [the guardian's] trust," are within the competence of the probate court as set forth in OCGA §§ 29-2-84, 29-2-76. Compare OCGA § 29-2-45. They are matters within the jurisdiction of the probate court in connection with the application for letters of dismission and must be resolved within that statutory procedure.

The two cases cited by the superior court do not support its assuming jurisdiction over the guardian's fulfillment of her duties with respect to plaintiff's property. In *Evans v. Little*, 246 Ga. 219, 220 (271 SE2d 138) (1980), the Supreme Court held that "[t]he existence or non-existence of administration of [an] estate does not preclude the bringing of a partition action by a tenant in common" and also that the liability of one co-tenant to the others for amounts he collected is based on his status as a co-tenant, not on his status as an administrator. Thus, the proper jurisdiction for the co-tenants' action was in the superior court. The other case cited by the superior court is *Atlanta Trust Co. v. Nat. Bondholders Corp.*, 188 Ga. 761 (4 SE2d 644) (1939), which involves an equitable petition for accounting, which plaintiff's action in the superior court is not.

Thus, I concur in the reversal of the superior court's judgment but only to this extent.

One other matter: plaintiff brought her action against both the guardian and the guardian's surety, Utica, but the probate court judgment she seeks to set aside did not relieve the surety. It just relieved the guardian from paying further bond. Plaintiff recognizes in her brief on appeal that Utica has not been discharged and relieved of liability. She apparently has not sued Utica on the bond. Utica is an appellant because it does not want the dismissal of its principal, the guardian, to be set aside. In this it should fail.

I am authorized to state that Judge Eldridge joins in this opinion.

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment of reversal. "An appeal shall lie to the superior court from any decision made by the probate court, except an order appointing a temporary administrator." OCGA § 5-3-2 (a). In my view, the issues in this appeal, as enumerated and briefed by the parties, involve strictly a determination whether the evidence supported the superior court's vacation and setting aside of the probate court's letters of dismission. The standard of appellate review is, therefore, simply an "any evidence" standard.

Plaintiff Suanne Marie Rivkin Quinton, now known as Suanne Marie Mitchell, initiated this petition to set aside the order of the

Probate Court of Union County, Georgia, which had previously "dismissed [her mother, defendant Linda Rivkin Plott, now known as Linda Rivkin Kirby ('defendant Kirby'),] as guardian of [plaintiff's] property. . . ." Defendant Utica Mutual Insurance Company "was served with a copy of the Petition as the surety on a bond in the amount of $450,000, which [bond] was issued pursuant to the Probate Court of Union County's Order of May 11, 1988." The petition alleged in part that defendant Kirby's "dismissal was improperly granted and/or fraudulently obtained as there was no accounting and settlement made to the Probate Court. . . ." Plaintiff amended her complaint to allege that she "did not become aware Defendant Kirby [allegedly] breached her fiduciary duty until December of 1994 when she [plaintiff] began to investigate the status of her estate," and further alleged commingling of funds, waste, and mismanagement. Plaintiff demanded a final accounting and settlement. Both defendants admitted that defendant Kirby had been dismissed as the guardian of plaintiff's property after plaintiff married but denied the material allegations of fraud and impropriety.

Plaintiff subsequently moved for summary judgment under OCGA § 9-11-56 (a), supporting her motion in part with the affidavits of Marcus Sosebee, Judge of the Probate Court of Union County. Probate Judge Sosebee, who is not an attorney, deposed that while it is the "procedure of [that] court, in a proceeding for the dismissal of a guardian, [to] appoint a guardian ad litem where the ward is still a minor, . . . and that a hearing [be] conducted on all issues . . . including a full accounting of the ward's estate, . . . [at] the time of the dismissal of [defendant Kirby] as natural guardian of the property of [plaintiff,] no guardian ad litem was appointed to represent the ward at the dismissal hearing; no hearing was conducted on the issues of dismissal, no final accounting was provided by the [defendant] and the fact that the ward was still a minor was not made known to the Court by [defendant] or her counsel. . . ." This testimony was corroborated by the affidavit of Shirley Stokes, former Clerk of the Probate Court of Union County.

The Superior Court of Union County determined that any presumption of regularity had been overcome and that the direct, positive, and uncontradicted evidence showed that the probate court "did not examine the guardian's accounts and vouchers to verify the truth of the application nor did the Probate Court receive evidence that the Plaintiff was of age and there was no longer a necessity for continuing the guardianship." Consequently, the Superior Court ordered "that the letters of dismission granted Defendant Kirby by the Probate Court of Union County on May 6, 1991 be . . . vacated and set aside. . . ." The Superior Court further ordered that "this case proceed to trial on the issue of a final accounting and settlement of

Defendant Kirby's guardianship. . . ." From this order effectively granting partial summary judgment, defendants bring this direct appeal. OCGA § 9-11-56 (h).

Defendants first contend the Superior Court erred in setting aside the judgment of the Probate Court, arguing that plaintiff failed to make out a case for relief from judgment under the standards of OCGA § 9-11-60 (d). This contention is, in my view, without merit.

"Letters of dismission may be granted by the judge of the probate court to any guardian upon compliance with the procedure outlined in this Code section. The guardian shall . . . [set] forth his full discharge of the duties of his trust. The judge of the probate court shall examine the guardian's accounts and vouchers to verify the truth of the application. . . . Proof shall be offered to show that the ward is of age or that there is no longer a necessity for continuing the guardianship." OCGA § 29-2-84 (a).

" 'It is an imperative duty of an accounting party, whether an agent, a trustee, a receiver or an executor (for . . . they all stand in the same situation) to keep his accounts in a regular manner, and to be always ready with his accounts; neglect of this duty is a ground for charging him with interest for balances in his hands and with cost. So a trustee and executor is bound to render every necessary information that is required of him, and he who, undertaking to give information, gives but half information, in the view of a court of chancery, conceals; if he has not all the information necessary, he is bound to seek first, and if practicable, to obtain it.' That concealment *per se* amounts to actual fraud when, from any reason, one party has a right to expect full communication of the facts from another, is a well-settled principle, recognized by both the civil and the moral law. [Cit.]" (Emphasis in original.) *Poullain v. Poullain*, 76 Ga. 420, 444 (5), 446 (4 SE 92). Like an executor or trustee, "the guardian [of a minor's property] acts in a fiduciary capacity, and is bound to utmost good faith with the court and the ward in the interest of the latter." *American Surety Co. v. Adams*, 190 Ga. 575 (hn. 2) (10 SE2d 30).

The uncontradicted positive evidence here fully supports the determination of the Superior Court that defendant Kirby failed to apprise the Probate Court of material facts, failed to offer an accounting, and failed to state the applicable standard for obtaining letters of dismission as established by OCGA § 29-2-84. "We have just seen that it is the duty of the ordinary [now probate judge], in passing upon all these accounts, and especially upon the final account, with a view to granting the guardian a discharge, to ascertain, before doing so, that all the duties of the trust have been fully performed, and that this essential fact must be made to appear by a careful scrutiny and examination by him of the various items thereof and the vouchers sustaining them. It is scarcely necessary to observe that the

omission of what is claimed to be much the larger part of the estate and the incorrectness of other items [or factual allegations], or[, as here,] the failure to furnish any vouchers whatever, would raise a presumption against the fairness of the transaction. . . ." *Poullain v. Poullain*, 76 Ga. 420, 444 (5), 445, 447, supra. The Superior Court did not, in my opinion, err in granting summary judgment to plaintiff, effectively vacating and setting aside the judgment of the Probate Court. As my colleagues in the majority would nevertheless reverse that correct determination, I respectfully dissent.

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 31, 1997 — ■

*Gambrell & Stolz, Bryan M. Cavan, Leo J. Fogarty, Ronald C. Melcher, Mikele S. Carter*, for appellants.
*Gunter & Stancil, Norman S. Gunter*, for appellee.